UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
LUCY MARIA GARNER,                    :        13 Civ. 4358 (JCF)
                                      :
                    Plaintiff,        :           MEMORANDUM
                                      :           AND  ORDER
        - against -                   :
                                      :
CAROLYN W. COLVIN,                    :
Acting Commissioner of Social         :
Security,                             :
                                      :
                    Defendant.        :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

        The plaintiff, Lucy Maria Garner, brings this action pursuant
to section 405(g) of the Social Security Act (the "Act"), 42 U.S.C.
§ 405(g), seeking review of a determination of the Commissioner of
Social Security (the "Commissioner") finding that she is not
entitled to disability insurance benefits.    The parties have
submitted cross-motions for judgment on the pleadings pursuant to
Rule 12(c) of the Federal Rules of Civil Procedure.    For the
reasons set forth below, the plaintiff's motion is granted in part,
the defendant's motion is denied, the Commissioner's decision is
vacated, and the case is remanded to the Social Security
Administration (the "SSA") for further proceedings consistent with
this opinion.[1]

_____

        [1] The parties have consented to my jurisdiction for all
purposes pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal

Background

    A. Personal History

    Ms. Garner was born on December 21, 1964.  (R. at 136).[2]  The record indicates that she has a college education.  (R. at 191).  The plaintiff's last job was as a laundry attendant, prior to which she was a family service worker.  (R. at 191, 214).  She left her most recent job in 2010 when she was fired.  (R. at 65).[3]  As of May 24, 2012, Ms. Garner lived in an apartment in New York City with her children.  (R. at 38, 64).

    B. Medical History

        1. Medical Evidence Before September 8, 2010

    The plaintiff alleges a disability beginning September 8, 2010, consisting of back and neck pain, which contributes to headaches and pain in her extremities.  (R. at 190).  She began

---

Rules of Civil Procedure.

    [2] "R." refers to the Administrative Record.

    [3] The record contains conflicting evidence as to when the plaintiff stopped working.  A Disability Report Form SSA-3368 (R. at 189-94) indicates a date of 2010 (R. at 191).  It is unclear whether this form was completed by Ms. Garner herself or by the interviewer.  This date is at odds with the plaintiff's own direct testimony and the opinion of the Administrative Law Judge (the "ALJ"), which refer to a date in 2009.  (R. at 44, 65). For purposes of this proceeding, I will use the 2010 date as it is consistent with the onset of the plaintiff's alleged disability in September of that year.  (R. at 41).

treatment with Dr. Navageni Rao around 2005.[4]  (R. at 348, 351).
From 2005 until 2009, Dr. Rao treated Ms. Garner for symptoms
arising from pain in the neck, lower back, upper back, and knees;
treatment included medication, physical therapy, and lidocaine
injections.  (R. at 270-72, 274, 276-77, 279-80, 287, 291, 351-52,
369-71, 396, 401-03, 407, 410-11, 428-29).  X-rays from August 2005
showed a normal lumbar spine and no evidence of significant
arthritic changes of the cervical spine.  (R. at 294-95).  An MRI
in September 2006 indicated a posterior disc herniation at L4-L5,
with a slight impingement on the thecal sac.  (R. at 291).  Ms.
Garner stopped treatment with Dr. Rao in May 2009 and did not
resume it until after her claim was submitted.

On April 15, 2009, Ms. Garner sought treatment at Harlem
Hospital Center and was treated by Dr. Roger Smoke.  She reported
confusion, headaches, and pain in her back, shoulders, elbows,
lower back, and right foot.  (R. at 318).  Dr. Smoke's primary
diagnosis was obesity.  (R. at 319).  The plaintiff was seen again

---

[4] The record reveals conflicting evidence regarding when Ms.
Garner first sought treatment from Dr. Rao.  Dr. Rao's letter
indicates that she has known the plaintiff since 2004 (R. at 348),
but the medical record contains no entry prior to August 8, 2005
(R. at 351).  Treatment records show that Ms. Garner was seen by
other practitioners at the clinic prior to August 2005.  (R. at
350, 352).  Since it is possible that Dr. Rao knew Ms. Garner
before 2005, but there is no documentation of an examination, I
will rely on the date from the medical record.

on July 15, 2009 for the same symptoms.  (R. at 321).

>                   2. Medical Evidence from September 8, 2010
>                      to May 24, 2012

>                         i. Dr. Louis Tranese

On June 15, 2011, Ms. Garner filed applications with the SSA for Social Security Disability Insurance Benefits ("SSD") and Supplemental Security Income Benefits ("SSI"), alleging that she had been disabled since September 8, 2010.  (R. at 136, 140).  On September 6, 2011, the plaintiff was examined by Dr. Louis Tranese, a consulting physician to whom she was referred by the SSA.  (R. at 300).  Ms. Garner reported neck and lower back pain.  (R. at 300). At the time, the plaintiff was five feet, six inches tall and weighed 293 pounds.  (R. at 301).  During the examination, she was able to change and get on and off the examination table without assistance, and her station and gait were normal.  (R. at 301). She was able to walk on her heels and toes while holding the examination table and squat to forty percent of her range.  (R. at 301).  She exhibited limited range of motion through her cervical and lumbar spine.  (R. at 301-02).  Her cervical spine showed full flexion, but extension was limited to thirty degrees with bilateral cervical and paracervical tenderness that extended into the superior trapezial region.  (R. at 301).  Her thoracic and lumbar spine showed full extension, but flexion was limited to seventy

4

degrees with complaint of generalized bilateral lumbar paraspinal tenderness, more so on the right than the left. (R. at 302). She exhibited full muscle strength and range of movement throughout her arms and legs, full bilateral grip strength, and intact hand and finger dexterity. (R. at 301-02). The plaintiff told Dr. Tranese that she cooked, cleaned, did laundry, and shopped, and that she did not require assistance with personal care. (R. at 301).

Dr. Tranese diagnosed Ms. Garner with discogenic low back pain with radicular symptoms, a reported lumbar disc herniation, and chronic neck pain. (R. at 302). Dr. Tranese assessed the plaintiff's physical limitations and restrictions and drew the following conclusions: the plaintiff had (1) moderate restrictions in heavy lifting and forward bending; (2) mild-to-moderate restrictions in stair climbing and long distance walking; (3) moderate restriction with squatting and kneeling; and (4) mild restriction with sitting or standing for long periods. (R. at 302). He did not opine as to what level of work she would be able to perform. On September 16, 2011, K. Saunders, a disability analyst for the SSA, completed a residual functioning capacity ("RFC") assessment by reviewing the plaintiff's file. (R. at 304-09). She concluded that the plaintiff could occasionally lift or carry up to twenty pounds, frequently lift or carry ten pounds,

stand and walk at least six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (R. at 305). The analyst found that the plaintiff could push and pull without restriction, frequently balance, and occasionally climb, stoop, kneel, crouch, or crawl. (R. at 305-06). The analyst opined that the plaintiff retained the capacity for light work.[5] (R. at 309).

### ii. Dr. Roger Smoke

On October 3, 2011, Dr. Smoke examined Ms. Garner for the first time since 2009. (R. at 321, 324). Ms. Garner reported back pain, headaches, anxiety, and fatigue. (R. at 324). Dr. Smoke diagnosed morbid obesity and other musculoskeletal symptoms. (R. at 324).

On November 22, 2011, Dr. Smoke completed a Multiple Impairment Questionnaire. (R. at 447-54). He reported treating

---

[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in the light work category may require a good deal of standing or walking, or may involve sitting most of the time with some pushing or pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). If someone can do light work, the SSA determines that he or she can also do sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

Ms. Garner yearly since 2009.  (R. at 447).  He diagnosed morbid
obesity and back pain, pain upon movement of the shoulders and
elbows, and tenderness of the trapezial muscles.  (R. at 447).  Dr.
Smoke noted that Ms. Garner's diagnostic tests were done elsewhere,
and he did not assess her RFC.  (R. at 449-53).

### iii. Dr. Nagaveni Rao

On October 5, 2011, Dr. Rao examined Ms. Garner for the first
time since 2009.  (R. at 418).  The plaintiff complained of neck
pain, low back pain, and left knee pain.  (R. at 418).  She also
had pain radiating to her left upper extremities, headaches, and
cracking sounds when she moved her neck.  (R. at 418).  Dr. Rao
noted that Ms. Garner's September 2006 MRI showed a posterior disc
bulge on L4-L5 slightly impinging on the thecal sac, and that x-
rays were negative for abnormalities at that time.  (R. at 418).
She noted that the plaintiff had not been working for one year but
was looking for a job.  (R. at 418).  Dr. Rao recommended Aleve or
Advil for the pain as well as a muscle relaxant.  (R. at 418).  Dr.
Rao also ordered x-rays of the cervical and lumbar spine and an EKG
to rule out cardiac pathology.  (R. at 422).  It is not  clear from
the record whether the x-rays were taken.  (R. at 418).

On October 19, 2011, Ms. Garner had a follow up appointment
with Dr. Rao.  (R. at 415).  Ms. Garner indicated that her neck

pain was getting worse and radiating down her left upper extremity. (R. at 415). She also complained that her medication was making her drowsy. (R. at 415). Dr. Rao advised the plaintiff to stop taking Tylenol with Codeine and her muscle relaxer and switch to Ibuprofen. (R. at 415). Dr. Rao noted that the plaintiff was in a program to find work. (R. at 415).

On October 26, 2011, Ms. Garner had another appointment with Dr. Rao. (R. at 458). Dr. Rao noted that the plaintiff came for a "letter to be on S.S. disability." (R. at 458). In the letter, Dr. Rao diagnosed Ms. Garner with neck pain secondary to osteoarthritis and muscle spasms and lower back pain secondary to disc bulge. (R. at 348, 458). Dr. Rao stated that she had known the plaintiff since 2004 and that Ms. Garner had been receiving physical therapy since then. (R. at 348). Dr. Rao noted that the plaintiff had pain on bending, carrying objects, stooping, and negotiating stairs, and opined that she could not sit for more than fifteen to twenty minutes. (R. at 348). Dr. Rao further concluded that Ms. Garner was unable to return to any kind of work, including a sedentary job, at that time. (R. at 348). The letter stated that Ms. Garner was receiving physical therapy three times per week. (R. at 348).

On December 28, 2011, Ms. Garner visited Dr. Rao again. (R.

8

at 517).  Dr. Rao reported limited range of motion in the neck with stiffness, pain at extreme range of motion, diffuse tenderness over the neck and left upper trapezial muscles, and a tender spot in the left paraspinals.  (R. at 517).  Furthermore, the plaintiff had tenderness in the thoracic spine at T3-4 and lumbar spine at L2-3, limiting her range of motion in the lower back.  (R. at 517).  Dr. Rao prescribed Celebrex, and a lidocaine injection was performed.[6] (R. at 510, 515, 517).

Ms. Garner had another follow-up appointment on January 25, 2012.  (R. at 456).  She complained of greater pain, radiating to the hands and causing numbness, which woke her up at night.  (R. at 456).  Dr. Rao noted that the plaintiff was not wearing splints and that physical therapy was not helping.  (R. at 456).  Ms. Garner stated that the lidocaine shots had helped slightly and she had lost her prescription to Celebrex.  (R. at 456).  Dr. Rao reported limited range of motion in the neck, diffuse tenderness over the neck and upper trapezial muscles, and a negative Tinal's sign at the wrist.[7]  (R. at 456).  Dr. Rao diagnosed neck pain and

---

[6] Dr. Rao also notes prescribing Naprosyn, but next to the note the word "refuse" appears, indicating that Ms. Garner refused the prescription.  (R. at 517).

[7] Tinel's sign is a sensation of tingling or "pins and needles" felt in the distal extremity of a limb when percussion is made over the site of an injured nerve.  It indicates a partial

bilateral carpal tunnel syndrome, and prescribed splints, Celebrex,
and Lunesta.  (R. at 456, 539).

On February 15, 2012, Dr. Rao completed a Multiple Impairment
Questionnaire.  (R. at 460-67).  She noted diagnoses of neck pain
secondary to degenerative joint disease, low back pain from disc
bulge, and carpal tunnel syndrome of both hands.  (R. at 460).
Clinical findings included limited range of motion of the neck and
lower back with pain and tenderness and muscle spasms.  (R. at
460).  Dr. Rao indicated that the plaintiff was being treated three
times per week.[8]  Dr. Rao cited diagnostic tests including an x-ray
of the cervical spine showing degenerative joint disease, an x-ray
of the lumbar spine showing osteophytes[9] at L4-L5-S1, and an MRI

---

lesion or early degeneration in the nerve.  PDR Medical Dictionary
1640 (2000) ("PDR Med. Dict.").

[8] It is unclear from the record whether Dr. Rao meant to state
that she was treating the plaintiff three times a week or that the
plaintiff was receiving treatment three times a week.  The record
shows that Dr. Rao was not seeing Ms. Garner three times a week
during the period in question, but rather five times during this
four-month period.  (R. 415, 418-22, 456-58).  However, earlier
reports show that the plaintiff went to physical therapy three
times per week during certain periods of time.  (R. at 369-95, 444-
45).  Also, Dr. Rao specifically refers to "physical therapy three
times/week" in the Questionnaire.  (R. at 464).  Therefore, Dr. Rao
was likely referring to the recommended physical therapy.

[9] An osteophyte is a bony excrescence, or outgrowth of a bone.
Dorland's at 1202.

showing a disc herniation at L4-5.[10]   (R. at 461).

Dr. Rao assessed Ms. Garner's RFC, stating that she could sit for two hours and stand or walk for four hours during an eight-hour work day.  (R. at 462).  Dr. Rao indicated it was necessary for the plaintiff to get up and move around every thirty to forty-five minutes when sitting, and stay standing for five to ten minutes before sitting down again.  (R. at 462-63).  She answered "yes" to the questions, "Would it be necessary or medically recommended for your patient not to sit continuously in a work setting?" and "Would it be necessary or medically recommended for your patient not to stand/walk continuously in a work setting?"  (R. at 462-63).  Dr. Rao opined that the plaintiff could never lift or carry more than twenty pounds, and could lift or carry over ten pounds only occasionally.  (R. at 463).  In Dr. Rao's assessment, Ms. Garner had minimal limitations in grasping, turning, and twisting objects with her hands, and with using her fingers and hands for fine manipulations.  (R. at 464).  She assessed moderate limitations for using arms for reaching (including overhead).  (R. at 464).  Dr. Rao indicated that she believed Ms. Garner's symptoms constantly

---

[10] There are no records of the new x-rays, if new ones were taken.  If Dr. Rao was referring to the x-rays and MRI from 2006, the diagnosis at that time was negative x-rays, which would contradict the finding here.  (R. at 294, 295, 418).

interfered with her attention and concentration and would likely become more severe in a competitive work environment. (R. at 464-65). Dr. Rao estimated that the plaintiff would miss two to three days a month as a result of her condition and that Ms. Garner could not tolerate even a "low stress" work environment. (R. at 465-66).

On March 12, 2012, Dr. Rao conducted another follow-up examination of Ms. Garner. She reported normal range of motion in the neck with slight decreased lateral rotation, diffuse tenderness over the cervical spine, paraspinal muscles, and upper trapezial muscles, and two tender spots. (R. at 514). She diagnosed neck pain and muscle spasms due to degenerative joint disease and bilateral carpal tunnel syndrome. (R. at 514). Ms. Garner was given lidocaine injections. (R. at 514). On April 4, the last follow up of the period in question showed no changes. (R. at 513).

C. Procedural History

On June 15, 2011, Ms. Garner filed applications for SSD and SSI. (R. at 136, 140). The applications were denied on September 21, 2011 (R. at 75), and the plaintiff requested a hearing before an ALJ. (R. at 83-84). The hearing was held before ALJ Michael Friedman on May 14, 2012. (R. at 62-71). The plaintiff was represented by an attorney at that proceeding. (R. at 64).

At the hearing, Ms. Garner testified that she suffered from pain radiating down her shoulders, neck, back, and as far as her knees.  (R. at 65).  As a result, Ms. Garner said that she could only stand for ten to fifteen minutes before she had to sit, and could only sit for twenty-five to thirty minutes before experiencing pain.  (R. at 66).  She opined that her pain was the result of stress and pressure.  (R. at 66).  Because of the pain, she stated that she is fatigued most of the time.  (R. at 69).

Ms. Garner further testified that medication sometimes helped her pain and that, while physical also therapy helped, she had been unable to receive it recently as a result of an insurance lapse. (R. at 65).  She also stated that exposure to sun and heat helped the pain, but that changing position -- from standing to sitting or vice versa -- did not.  (R. at 66).  She further testified that she could walk eight city blocks, cook, clean the apartment, and grocery shop with someone to assist her.  (R. at 67).  She stated that she hoped to return to a desk job at some point.  (R. at 70).

On May 24, 2012, ALJ Friedman issued a decision finding that the plaintiff was not disabled.  (R. at 38-50).  The plaintiff requested a review of the ALJ's decision by the Appeals Council. (R. at 36).  The Appeals Council denied the request for review on April 25, 2013 (R. at 8) and again on June 26, 2013 after receiving

new evidence (R. at 1), rendering the ALJ's determination the final decision of the Commissioner.  (R. at 1).

<u>Analytical Framework</u>

A. <u>Determination of Disability</u>

A claimant is disabled under the Act and therefore entitled to disability benefits if she can demonstrate through medical evidence that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); <u>see also</u> <u>Hahn v. Astrue</u>, No. 08 Civ. 4261, 2009 WL 1490775, at *6 (S.D.N.Y. May 27, 2009); <u>Marrero v. Apfel</u>, 87 F. Supp. 2d 340, 345-46 (S.D.N.Y. 2000).  The disability must be of "such severity that [the claimant] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is entitled to disability benefits, the Commissioner employs a five-step sequential analysis. 20 C.F.R. § 404.1520.  First, the claimant must demonstrate that she is not currently engaging in substantial gainful activity.  20

C.F.R. § 404.1520(a)(4)(i) & (b).  Next, the claimant must prove
that she has a severe impairment that "significantly limits [her]
physical or mental ability to do basic work activities."  20 C.F.R.
§ 404.1520(a)(4)(ii) & (c).  Third, if the impairment is listed in
20 C.F.R. § 404, Subpt. P, App. 1 or is the substantial equivalent
of a listed impairment, the claimant is automatically considered
disabled.  20 C.F.R. § 404.1520(a)(4)(iii) & (d).  If, however, the
claimant's impairment is neither listed nor equal to any listed
impairment, she must prove that she does not have the residual
functional capacity to perform her past work.  20 C.F.R. §
404.1520(a)(4)(iv) & (e).  Finally, if the claimant satisfies her
burden of proof on the first four steps, the burden shifts to the
Commissioner to demonstrate that there is alternative substantial
gainful employment in the national economy that the claimant can
perform.  20 C.F.R. § 404.1520(a)(4)(v) & (g); Longbardi v. Astrue,
No. 07 Civ. 5952, 2009 WL 50140, at *23 (S.D.N.Y. Jan. 7, 2009)
(citing Rosa v. Callahan, 168 F.3d 72, 77-78 (2d Cir. 1999), and
Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)).  In order to
determine whether the claimant can perform other substantial,
gainful employment, the Commissioner must consider objective
medical facts, diagnoses or medical opinions based on these facts,
subjective evidence of pain or disability, and the claimant's

15

educational background, age, and work experience.  <u>Hahn</u>, 2009 WL 1490775, at *7 (citing <u>Brown v. Apfel</u>, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam)).

    B. <u>Judicial Review</u>

    Under Rule 12(c) of the Federal Rules of Civil Procedure, a party is entitled to judgment on the pleadings if she establishes that no material facts are in dispute and that she is entitled to judgment as a matter of law.  <u>Burnette v. Carothers</u>, 192 F.3d 52, 56 (2d Cir. 1999); <u>Morcelo v. Barnhart</u>, No. 01 Civ. 743, 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003); <u>Carballo v. Apfel</u>, 34 F. Supp. 2d 208, 213 (S.D.N.Y. 1999).

    The Social Security Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A court reviewing the Commissioner's decision "may set aside a decision of the Commissioner if it is based on legal error or if it is not supported by substantial evidence."  <u>Hahn</u>, 2009 WL 1490775, at *6 (internal quotation marks omitted); <u>see</u> <u>Longbardi</u>, 2009 WL 50140, at *21; <u>Bonet v. Astrue</u>, No. 05 Civ. 2970, 2008 WL 4058705, at *2 (S.D.N.Y. Aug. 22, 2008).  Judicial review, therefore, involves two levels of inquiry.  First, the court must decide whether the Commissioner applied the correct legal standard.  <u>Tejada v. Apfel</u>,

16

167 F.3d 770, 773 (2d Cir. 1999); <u>Calvello v. Barnhart</u>, No. 05 Civ. 4254, 2008 WL 4452359, at *8 (S.D.N.Y. April 29, 2008).  Second, the court must decide whether the ALJ's decision was supported by substantial evidence.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  <u>Longbardi</u>, 2009 WL 50140, at *21 (citing <u>Brown</u>, 174 F.3d at 62).  Substantial evidence in this context is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Hahn</u>, 2009 WL 1490775, at *6 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>accord Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004).  "If substantial evidence supports the Commissioner's decision, then it must be upheld, even if substantial evidence also supports the contrary result."  <u>Ventura v. Barnhart</u>, No. 04 Civ. 9018, 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Alston v. Sullivan</u>, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.")).

17

Discussion

    A.  ALJ's Decision

    ALJ Friedman evaluated Ms. Garner's claim pursuant to the five-step sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act between September 8, 2010 and May 24, 2012.  20 C.F.R. §§ 404.1520, 416.920.

    As an initial matter, the plaintiff met the insured status requirements of the Social Security Act.[11]  At step one, the ALJ found that Ms. Garner had not engaged in substantial gainful activity since September 8, 2010.  (R. at 43).  At step two, he determined that Ms. Garner had two severe impairments, obesity and degenerative disc disease of the lumbar spine with disc herniation at L4-L5.  (R. at 43).  However, the ALJ determined at step three that none of Ms. Garner's impairments, nor any combination of those impairments, was of a severity to meet or medically equal one of the listed impairments in Appendix 1 of the regulations.  (R. at 43).

    At step four, the ALJ determined that Ms. Garner had the

---

    [11]In accordance with sections 216(i) and 223 of the Social Security Act, the claimant must acquire sufficient quarters of coverage to qualify for benefits.  The plaintiff is insured through June 30, 2014 and, therefore, meets the requirements.  (R. at 43).

residual functional capacity to perform "the full range of sedentary work" as defined in the regulation, with the limitation that the plaintiff can "occasionally climb stairs, stoop, kneel, crouch, and crawl; and can occasionally perform repetitive pushing, pulling, bending, and reaching." (R. at 44). In reaching this conclusion, the ALJ considered the plaintiff's reported symptoms and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found her allegations "concerning the intensity, persistence and limiting effects of these symptoms [] not credible to the extent they are inconsistent with the [] residual functioning capacity assessment." (R. at 45). The ALJ also considered medical evidence, including the opinions of two doctors and the SSA disability analyst. (R. at 48). He assigned substantial weight to the opinion of the consulting physician, Dr. Tranese, significant weight to the opinion of the disability analyst, and some or no weight to the opinion of Dr. Rao, the plaintiff's treating physician. (R. at 48). He did not indicate what weight he assigned to the opinion of Dr. Smoke. (R. at 46, 48). Based on the record, the ALJ concluded that Ms. Garner's RFC left her unable to perform any past relevant work. (R. at 49).

Finally, at step five, based on his review of the entire

record and the framework established by the Medical-Vocational
Guidelines, the ALJ determined that "there are jobs that exist in
significant numbers in the national economy that the claimant can
perform." (R. at 49). The plaintiff challenges the ALJ's decision
on the grounds that (1) the ALJ failed to give controlling weight
to the treating physician, and (2) the ALJ failed to properly
evaluate her credibility.

B.  Treating Physician Rule

Ms. Garner alleges that the ALJ erred by failing to grant
controlling weight to her treating physician, Dr. Rao. (Memorandum
of Law in Support of Plaintiff's Motion for Judgement on the
Pleadings ("Pl. Memo."), at 7). The SSA regulations establish that
"the opinion of a claimant's treating physician as to the nature
and severity of the impairment is given 'controlling weight' so
long as it 'is well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with the
other substantial evidence in [the] case record.'"  Burgess v.
Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original)
(quoting 20 C.F.R. § 404.1527(c)(2));[12]  accord Green-Younger v.
Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Correale-Englehart v.

---

[12]  Prior to March 26, 2012, the treating physician rule
appeared in 20 C.F.R. § 1527(d)(2) and subsequently was moved to 20
C.F.R. § 1527(c)(2).

<u>Astrue</u>, 687 F. Supp. 2d 396, 426 (S.D.N.Y. 2010). "This preference is generally justified because treating sources are likely to be 'the medical professionals most able to provide a detailed, longitudinal picture' of a plaintiff's medical impairments and offer a unique perspective that the medical tests and SSA consultants are unable to obtain or communicate." <u>Correale-Engelhart</u>, 687 F. Supp. 2d at 426 (quoting 20 C.F.R. § 416.927(c)(2)).

If the ALJ determines that a treating physician's opinion is not controlling, he is nevertheless required to consider the following factors in determining the weight to be given to that opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence provided to support the treating physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the Commissioner's attention that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c); <u>see</u> <u>Halloran</u>, 362 F.3d at 32.   The ALJ must give "good reasons" for not crediting the plaintiff's treating physician.   20 C.F.R. § 404.1527(c)(2); <u>see</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999).

The plaintiff alleges that the ALJ did not properly consider these factors when determining the weight that should be assigned to Dr. Rao's opinion. (Pl. Memo. at 7-8, 11). Determination of "dispositive" issues, such as whether a claimant "meet[s] the statutory definition of disability" and cannot work, are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); see Snell, 177 F.3d at 133. Thus, the SSA considers the data and opinion of the treating physician but draws its own conclusions as to whether the claimant is disabled. A treating physician's statement that the plaintiff is unemployable cannot itself be determinative. See Snell, 177 F.3d at 133.

Here, in concluding that Ms. Garner could perform sedentary work, the ALJ declined to give controlling weight to Dr. Rao's conclusion as to the plaintiff's disabling limitations. (R. at 48). The ALJ gave "some weight" to Dr. Rao's opinions regarding "the nature and severity of [the] claimant's physical impairments," including her limitations using her hands and arms. (R. at 48). However, the ALJ accorded "no weight" to Dr. Rao's assessment that the plaintiff could only sit for two hours and walk or stand for four hours during a normal working day. (R. at 48). The ALJ's reason for this determination was that Dr. Rao's opinion was "inconsistent with [the] claimant's activities of daily living, her

testimony at the hearing, and the rest of the substantial evidence of record." (R. at 48).

The ALJ is not required to give the treating physician controlling weight, but he is required to give "good reasons" for the assignment of weight that he chooses. 20 C.F.R. § 404.1527(c)(2). "Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited." Snell, 177 F.3d at 134.

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even -- and perhaps especially -- when those dispositions are unfavorable. A claimant like [Ms. Garner], who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. [Ms. Garner] is not entitled to have [her physician]'s opinion on the ultimate question of disability be treated as controlling, but she is entitled to be told why the Commissioner has decided -- as under appropriate circumstances is his right -- to disagree with [the treating physician].

Id. (internal citation omitted)(remanding case to Appeals Council for statement of reasons on basis of which treating physician's finding of disability was rejected).

Here, the ALJ justified assigning little or no weight to Dr.

Rao's opinion because it was "inconsistent with claimant's activities of daily living, her testimony at the hearing, and the rest of the substantial evidence of record." (R. at 48). This conclusory statement does not "'comprehensively set forth [the ALJ's] reasons for the weight assigned to [the] treating physician's opinion.'" Burgess, 539 F.3d at 129 (quoting Halloran, 362 F.3d at 33); see also Duncan v. Astrue, No. 09 CV 4462, 2011 WL 1748549, at *16 (E.D.N.Y. May 6, 2011) (explaining that conclusory statements, such as an opinion being "not supported by the preponderance of the objective evidence of record" and "not consistent with the evidence on record," are not sufficiently good reasons for assigning reduced weight to a treating physician's opinion). Even though a thorough review of the Administrative Record might indicate reasons for ALJ Friedman's decision not to assign Dr. Rao's opinion controlling weight, the "good reasons" must be articulated and "post hoc rationalizations for agency action" are not acceptable. Newbury v. Astrue, 321 F. App'x 16, 18 (2d Cir. 2009) (internal quotation marks omitted) (holding that a review of the decision and the record in entirety was not a substitute for specifically delineating reasons for the weight given to the treating physician's opinion). Particularly puzzling is the fact that the ALJ assigned no weight only to the portion of

Dr. Rao's opinion that was inconsistent with the ALJ's RFC evaluation, and some weight to the portion that did not conflict with the ALJ's assessment.  (R. at 48).

The factors outlined in 20 C.F.R. § 404.1527(c) are not specifically addressed in the ALJ's decision.  The ALJ failed to adequately discuss the length, frequency, nature and extent of Dr. Rao's relationship with the plaintiff.  See Serrano v. Colvin, No. 12 Civ. 7485, 2014 WL 197677, at *16 (S.D.N.Y. Jan. 17, 2014).  For example, ALJ Friedman did not reconcile the decision to give no weight to Dr. Rao's opinion with the fact that Dr. Rao had been treating Ms. Garner for seven years at the time of the hearing, and that the plaintiff had been complaining of the same ailments throughout, years before she applied for benefits.  (R. at 351). In fact, Dr. Rao saw Ms. Garner at least twenty-eight times since 2005, six of which were during the period of alleged disability in question.  (R. at  270, 271, 274, 276-80, 287, 351, 352, 396, 401, 403-05, 407-08, 410-11, 415, 418, 420, 456, 510, 513-14, 518).  The doctor-patient relationship here is clearly sufficient for Dr. Rao to give a "'detailed, longitudinal history'" and "unique perspective" when it comes to Ms. Garner's impairments.  Correale-Engelhart, 687 F. Supp. 2d at 426 (quoting 20 C.F.R. § 416.927(c)(2)).

Additionally, the ALJ neither took into account the evidence that supports Dr. Rao's opinion, nor her specialization in the field of physical medicine and rehabilitation. The record indicates that Ms. Garner had an MRI in 2006 that showed a disc herniation at the L4-L5 vertebrae. (R. at 291). There is no new diagnostic evidence to indicate that this injury has subsided. Therefore, the ALJ erred in concluding that the objective medical evidence did not support Dr. Rao's opinion. The ALJ also noted that Dr. Rao is a Board-Certified physical medicine and rehabilitation specialist, but did not justify ignoring this factor and choosing to assign more weight to both the one-time consulting physician and the SSA's disability analyst. (R. at 45, 48). In sum, the ALJ only reasoned that Dr. Rao's opinion was not consistent with the record as a whole and did not give specific reasons why. (R. at 48); see 20 C.F.R. § 404.1527(c)(4). The ALJ is not required to resolve all inconsistencies, but "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing judge] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

Furthermore, the conflicting medical evidence in this case is highly relevant to the ALJ's determination that Ms. Garner retained

the RFC for a full range of sedentary work. Sedentary work requires the ability to sit for approximately six hours out of an eight-hour workday, and frequently alternating between standing and sitting may not be within the meaning of sedentary work. SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996); see also Ferraris, 728 F.2d at 587 & n.3. In fact, Dr. Tranese's determination that the plaintiff had mild restrictions with sitting or standing for long periods does not necessarily conflict with Dr. Rao's opinion that the plaintiff needs to alternate between standing and sitting. (R. at 302, 348). Nor does it conflict with the plaintiff's own testimony about her ability to sit and stand. (R. at 68). Dr. Rao's opinion does, however, conflict with the disability analyst's opinion that Ms. Garner could sit for six hours out of an eight-hour workday. (R. at 305). A non-examining source, such as the SSA's disability analyst, is usually to be given less weight than an examining source. 20 C.F.R. § 404.1527(c)(1). The ALJ explained this decision by stating that the SSA disability analysts are experts in analyzing disability claims. (R. at 48). This conclusion offers no genuine explanation for the decision to assign the analyst's opinion more weight than that of the treating physician. Accordingly, the case must be remanded in order for the ALJ to further develop the record, and, if his ultimate

27

determination remains the same, to fully explain why Dr. Rao's opinion was not given greater weight.

C. Credibility

The plaintiff alleges that the ALJ improperly discounted her subjective complaints of pain. (Pl. Memo. at 11). Ms. Garner's credibility can only be properly assessed after the correct application of the treating physician rule. In determining whether a claimant is disabled, the SSA considers all of the claimant's symptoms, including pain, and "the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). A treating physician's opinion is a significant part of the evidence that is weighed in determining the credibility of a claimant under 20 C.F.R. § 404.1529. Furthermore, in making a credibility determination, the ALJ must consider:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; (5) any treatment, other than medication, the claimant has received; (6) any other measures the claimant employs to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain or other symptoms.

Kane v. Astrue, 942 F. Supp. 2d 301, 313, (E.D.N.Y. 2013) (citing

20 C.F.R. § 404.1529(c)(3)(i)-(vii)).   Therefore, the issue of credibility should be revisited on remand, and evaluated in light of the proper application of the treating physician rule and the remaining factors listed above.

> D.   <u>Remedy</u>

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding the case for a rehearing.   Remand for additional factual development is appropriate where "'there are gaps in the administrative record or the ALJ has applied an improper legal standard.'"   <u>Rosa</u>, 168 F.3d at 82-83 (quoting <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996)); <u>see also</u> <u>Halloran</u>, 362 F.3d at 33.   In this case, I am not in the position to determine whether Ms. Garner is entitled to benefits or for what period.   Instead, the ALJ should make such a determination after proper application of the treating physician rule and additional development of the record as he sees fit.

<u>Conclusion</u>

For the foregoing reasons, the Commissioner's decision denying the plaintiff's application for benefits is vacated and the case is remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).   The Clerk of the Court shall enter judgment

accordingly and close the case.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
        June 27, 2014

Copies mailed this date to:

Charles E. Binder, Esq.
Law Offices of Harry J. Binder and Charles E. Binder, P.C.
60 East 42 Street
Suite 520
New York, NY 10165

Susan D. Baird, Esq.
Assistant United States Attorney
86 Chambers Street, 3d Floor
New York, NY 10007